No. 47,097

STATE OF KANSAS, *Appellee*, v. R. O. KELLY, *Appellant*.

(515 P. 2d 1030)

Opinion filed November 3, 1973.

*A. J. Focht*, of Smith, Shay, Farmer and Wetta, of Wichita, argued the cause, and *Paul V. Smith*, of the same firm, was on the brief for the appellant.

*Keith Sanborn*, district attorney, argued the cause, and *Vern Miller*, attorney general, and *Stephen M. Joseph*, of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: In this case R. O. Kelly, the appellant, is seeking to set aside a 1960 conviction he suffered in the Sedgwick county court of common pleas. He wants, he says, a trial *de novo*. His current demand to face his accusers, asserted for the first time more than a decade after his conviction, is the substance of this law suit.

Kelly's travails began on July 28, 1960, when his journeys as a purveyor of an alleged cure for baldness brought him to Wichita. There certain of his solicitations of public patronage apparently

caught the watchful eye of Sedgwick county officialdom; he was charged in the court of common pleas with false advertising, a misdemeanor under the Kansas food, drug and cosmetic act (now K. S. A. 65-655 *et seq.*). He was arrested the same day and taken to the Sedgwick county jail, where he immediately secured the services of a professional bondsman.

The bondsman, Kelly says, wouldn't make bond for him as a non-Kansan unless he had local counsel to represent him. Accordingly he retained the late C. B. Moy, then a practicing attorney in Wichita. Kelly thereupon appeared before the court, accompanied by his attorney, and entered a plea of not guilty. Trial was set for August 15, 1960, and Kelly's appearance bond was fixed at $500.

That day Kelly signed a number of papers for his attorney and bondsman which he assumed were "regular bond forms." Among them, it appears, was an appeal bond. He was released from custody and left town the same day. He went home to Arizona, and was not to return to Wichita until some twelve years later.

In the meantime, the case of State of Kansas vs. Kelly was pursuing its routine course in the court of common pleas: the trial date was continued by the court from August 15 to August 29, 1960; on the latter date a bond forfeiture was first ordered and later, when attorney Moy appeared, was set aside; the case was set for September 1, 1960, "for disposition."

On August 31, 1960, the case came before the then judge, George M. Ashford. He filled in a printed journal entry form to show the appearances of counsel on behalf of the state and defendant; he did not strike from the form the printed recitation of the defendant's personal appearance. Judge Ashford also penned in that "It is stipulated between deft. & State that the state's evidence would establish a prima facie case of guilt as charged."

On the basis of this stipulation Judge Ashford found the defendant Kelly guilty, and sentenced him to 60 days in the county jail and a fine of $300, the maximum penalty provided by law. He fixed an appeal bond of $500, and granted the defendant a ten day stay in which to perfect an appeal.

Kelly's appeal was duly taken to the district court, but there, on September 19, 1960, Kelly's motion to dismiss his appeal with prejudice was sustained. The journal entry sustaining his motion and remanding the case to the court of common pleas for execution of the sentence there imposed was approved by Kelly's attorney. A

commitment order for Kelly was later issued by the court of common pleas and remained outstanding and unexecuted over the years.

There the matter rested for almost twelve years until, on May 10, 1972, Kelly filed a motion in the court of common pleas to set aside the 1960 judgment and sentence. He alleged that "said judgment and sentence are illegal and void in that the defendant was not personally present in court at the time of said judgment and sentence as required by law." He also asked to withdraw the stipulation, recorded by the court of common pleas and quoted above, because it was made "without his authority, and without his knowledge or consent."

Attached to the motion was Kelly's affidavit setting out the 1960 events basically as outlined above. At a hearing before the court of common pleas on May 30, 1972, Kelly was present and testified, repeating the substance of his affidavit.

His testimony did, however, add two significant details:

First, he did in fact sign the appeal bond as well as the appearance bond, although he insisted that he did all his signing at one time, on July 28, 1960.

Second, his Wichita attorney called him "two or three times" concerning the case, and advised him of the upcoming trial date. Kelly's response was that he did not intend to return to Wichita—his Arizona lawyer had told him it would be just like ignoring a traffic ticket. Kelly testified that Moy told him if he didn't show up "they would come after me," but "He didn't say I would be convicted or anything like that."

Kelly's motion to vacate was heard by Robert L. Morrison, judge of the court of common pleas, on May 30 and June 5, 1972. The factual issue to be determined was whether Kelly was or was not present at the time sentence was imposed in 1960. Judge Morrison drew on his own experience on the bench of that court, dating back to the first part of 1961. He found that the printed recitation of the defendant's appearance shouldn't be given much—and certainly not controlling—weight; it had not been Judge Ashford's practice to strike the recitation when the defendant did not appear. Choosing, rather, to believe Kelly's affidavit and sworn testimony, Judge Morrison found that Kelly had not been present when sentence was pronounced.

While the state makes some argument that the record contained in the 1960 journal entry is conclusive as to the facts recited, we

think Judge Morrison was amply justified in refusing to accept that record at face value. If it did not speak the truth, he had an affirmative duty to make it do so. *State v. Lyon,* 207 Kan. 378, 485 P. 2d 332, Syl. ¶ 2; *Ramsey v. Hand,* 185 Kan. 350, 343 P. 2d 225, Syl. ¶ 5; *Tafarella v. Hand,* 185 Kan. 613, 617-18, 347 P. 2d 356.

Judge Morrison went on to say:

". . . The Court finds that trial of the case on August 31, 1960, and the conviction thereon, was valid but that the defendant was not present and sentence of imprisonment should not have been imposed in his absence."

He accordingly set aside the original sentence in its entirety. He refused, however, to set aside the stipulation or the finding of guilt. Instead, regarding the defendant as one who had previously been found guilty but had not yet been sentenced, he proceeded to impose a fine of $300.

Kelly promptly appealed to the district court from the new sentence imposed. There he took the position that he had appealed from a judgment and sentence imposed in 1972, and that like any other appellant from the court of common pleas he was entitled to a trial *de novo* under K. S. A. (now 1972) Supp. 22-3610. The district court, after hearing arguments, took the matter under advisement. On July 5, 1972, in a journal entry which first reviewed the history of the case, the district court reached the following result:

"This Court finds that the motion filed by the defendant in the Court of Common Pleas in 1972 amounts to an appeal from the judgment, verdict, and sentence of the Court of Common Pleas given in the year 1960, and, in effect, this present appeal to the District Court amounts to an appeal in which the defendant seeks a trial de novo of a case tried in the year 1960 which appeal was dismissed by the defendant.

"It is this Court's finding and judgment that the Court of Common Pleas in 1972 had no jurisdiction nor authority to make any ruling in this case which was tried in the year 1960 and the appeal therefrom having been dismissed by the defendant in 1960.

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that the purported appeal of the defendant to the District Court from the Court of Common Pleas is dismissed by the Court. This case is remanded to that Court for further proceedings in accordance herewith."

The district court orally elaborated on its judgment as follows:

"THE COURT: It is this Court's opinion that this Court has no jurisdiction in this matter as of today.

"Here's what I've tried to do: on the 21st day of June, 1972, I said that I found that Morrison did not change Ashford's verdict, judgment, or finding of guilty and I sort of left the matter of whether some other Court should consider the fact that Morrison had any authority to change the sentence. I sort

of left that up in the air. Now, what I'm deciding today is, one, that Morrison not only didn't change Ashford's verdict, judgment, and finding of guilty, I'm finding not only was Morrison incorrect when he undertook to change the fine and sentence of Ashford's, but I'm making a third decision and that is that I don't think Morrison had any jurisdiction or any authority to change anything in the case that Ashford did, so I guess I'm finding three things. Now, that doesn't leave anything up in the air."

Kelly has now appealed to this court.

His argument may be paraphrased as follows: First: His personal appearance at the time of sentencing in 1960 was required by statute; since he was not present the original sentence was void, and a new sentence could be imposed to replace the original. Second: The new sentence of the court of common pleas constitutes a new "judgment" as of its 1972 imposition, subject to the same appellate rules as any other 1972 conviction in that court. Third: Since he timely appealed from the judgment of 1972, he is entitled to the same trial *de novo* in district court as is provided by statute for any other timely appeal from that court.

The state, on the other hand, argues that the 1960 judgment was not void but at most voidable; that Kelly waived his right to be present by voluntarily absenting himself; and that his appeal from the original judgment and subsequent voluntary dismissal of the appeal constituted acquiescence so as to preclude the present attack on the 1960 judgment. On the whole we agree with the state's position.

Our constitution guarantees to an accused the right to defend "in person, or by counsel" and to confront his accusers (Kan. Const., Bill of Rights, § 10). In 1960 the primary statute implementing these rights was G. S. 1949, 62-1411:

"No person indicted or informed against for a felony can be tried unless he be personally present during the trial; nor can any person indicted or informed against for any other offense be tried unless he be present, either personally or by his counsel."

We have many times held that these rights may be waived by the accused, even in felony cases, and that voluntary absence may be deemed to be such a waiver. Thus a felony trial commenced when the defendant was present could be concluded and a verdict received in his absence when it was shown that the defendant, free on bond, had fled the jurisdiction. *Cox v. Hand,* 185 Kan. 780, 347 P. 2d 265, cert. den. 363 U. S. 822, 4 L. Ed. 2d 1520, 80 S. Ct. 1265; *State v. Way.,* 76 Kan. 928, 93 Pac. 159.

In misdemeanor cases the constitution and statute clearly authorize a trial such as was had here, with only counsel present. *State v. Hall,* 138 Kan. 460, 26 P. 2d 265, Syl. ¶ 1. See, also, *State v. Bland.,* 91 Kan. 160, 136 Pac. 947; *State v. Miller.,* 87 Kan. 454, 124 Pac. 361; *State v. Forner.,* 75 Kan. 423, 89 Pac. 674. And cf. *State v. Cade,* 210 Kan. 544, 502 P. 2d 782, where we held that appearance by counsel only was sufficient to prevent the dismissal of a misdemeanor appeal; and *State v. Johnson.,* 82 Kan. 450, 108 Pac. 793, where it was held that where only counsel appeared for the trial of a misdemeanor, whether to proceed with the trial or forfeit the defendant's bond was in the discretion of the trial court.

If the defendant may waive his right to be present throughout the entire trial, including the return of the verdict, what then of his presence at the rendition of sentence? Kelly relies on the then applicable provision of the former code of criminal procedure, G. S. 1949, 62-1507:

"For the purpose of judgment, if the conviction be for an offense punishable by imprisonment, the defendant must be personally present; if for a fine only, he must be personally present, or some responsible person must undertake for him to pay the judgment and costs; judgment may then be rendered in his absence."

As long ago as *State v. Baxter.,* 41 Kan. 516, 21 Pac. 650, we not only recognized that the defendant need not be present at the trial of a misdemeanor, but that "It is manifest that the rule of [the predecessor of 62-1507], requiring him to be present, or that some responsible person must undertake for him to pay the judgment and costs, is made for the benefit and protection of the state rather than of the defendant. . . ." (p. 518.) In this view of the statute its purpose is to ensure that if the judgment is for imprisonment, the body of the defendant is immediately available to satisfy it; if a fine only, that the fine shall be paid forthwith. If this is so, then the presence of the defendant may be dispensed with by the court in either event if the state is agreeable.

There is, of course, another reason for the personal presence of the accused at sentencing, and that is for the time-honored right of allocution. That right was also codified, in G. S. 1949, 62-1510. Yet we have said:

"Failure to comply with the provisions of G. S. 1949, 62-1510 (now K. S. A. 62-1510), being a procedural section of the criminal code, is not jurisdictional. Failure to give the defendant in a criminal action an allocution pursuant to

such statute is error where the statute directs that it be given, but it is not reversible error unless it has affected a substantial right of the defendant." (*State v. Engberg,* 194 Kan. 520, 400 P. 2d 701, Syl. ¶ 1, cert. den. 383 U. S. 921, 15 L. Ed. 2d 676, 86 S. Ct. 899; overruled on other grounds, *State v. Duke,* 205 Kan. 37, 468 P. 2d 132. See also, *Wippel v. State,* 203 Kan. 207, 453 P. 2d 43.)

In *State v. Land.,* 51 Kan. 1, 32 Pac. 657, failure to give an allocution was held not to be a material error, in part because the case was a misdemeanor not requiring the personal presence of the defendant.

In *State v. Engberg,* supra, we quoted with approval from 15 Am. Jur., Criminal Law § 457:

"In the light of the modern tendency to treat the allocution as a mere formality, there is no question that it can be waived by the defendant, and this is done where counsel is present and no request to be heard is made and no objection is interposed to being sentenced without being heard."

We view the requirement of the defendant's presence at the time of sentence as being for the benefit of both the state and the defendant. On the one hand it insures that the sentence may be executed, and on the other that the defendant has the benefit of an allocution. While the statute is "mandatory" in the sense that either party may demand compliance, it is no more jurisdictional than the many other constitutional and statutory mandates which may be waived by a party for whose benefit they were fashioned. Whatever rights Kelly may have had were effectively waived by his deliberately chosen course of action.

To recapitulate that course: Kelly retained and personally appeared with Kansas counsel; later, on advice of Arizona counsel, he deliberately chose not to appear on the day set for trial; to dispense with his presence he executed and placed in counsel's hands not only an appearance bond, but an appeal bond. The latter bond, of course, clearly implies knowledge on Kelly's part before he left Wichita that his non-appearance might well result in conviction. It further suggests an utter disregard of the consequences. His subsequent conduct bears out this attitude; he made no inquiry for almost twelve years. Under these circumstances we hold that he had no standing to challenge the 1960 judgment, and the court of common pleas had no jurisdiction to entertain his motion.

The fact that Kelly appealed and then dismissed his appeal only

serves to reinforce our conclusion. Even claims having constitutional dimensions may be foreclosed from consideration by a deliberately chosen course of conduct. Thus, if a state prisoner deliberately bypasses available state procedures for determining a federal constitutional claim, a federal court may refuse to consider it, no matter how meritorious. *Foy v. Noia*, 372 U. S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822. Even if we assume Kelly had grounds to complain of the original judgment, *i. e.*, even if it were voidable, he had a ready remedy by way of appeal. He did not merely fail to avail himself of that remedy, he actually employed it and voluntarily abandoned it. Under analogy to the federal rule, he may well be deemed estopped to challenge the validity of the original judgment by reason of his acquiescence.

Kelly relies on *Roberts v. State*, 197 Kan. 687, 421 P. 2d 48, and *Aeby v. State*, 199 Kan. 123, 427 P. 2d 453. In each of those cases the original sentence imposed was improper and the trial court sought to correct the sentence without the presence of the defendant, who was confined in the state penitentiary. In each case we upheld the right of the trial court to substitute a new sentence for the invalid one, but in each we held that the defendant's personal presence at the resentencing was required under section 62-1507. Those cases are inapplicable here because in neither case was there a question of waiver, in neither was the prisoner present by retained counsel who acquiesced in the imposition of sentence, and each was a felony case.

Because of the deliberate and calculated actions of the defendant he waived his right to be present at the 1960 sentencing.

It follows that the 1960 judgment was valid and the attempted resentencing by the court of common pleas was a nullity. The attempted appeal therefrom was therefore properly dismissed.

The judgment is affirmed.

APPROVED BY THE COURT.