**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Paul Espinoza HERNANDEZ and Juan
Carlos Lamelas,
Defendants–Appellants.**

**No. 87–2643.**

United States Court of Appeals,
Fifth Circuit.

March 25, 1988.

Rehearing and Rehearing En Banc
Denied April 27, 1988.

---

Rene A. Sotorrio, Coral Gables, Fla., for Lamelas.

James R. Gough, Scott Behnke, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before GARWOOD and JONES, Circuit Judges, and FISHER,[*] District Judge.

JOE J. FISHER, District Judge.

Defendants-appellants, Paul Espinoza Hernandez and Juan Carlos Lamelas seek a reversal of their drug convictions because the district court proceeded with the trial after their voluntary absence. A jury trial with co-defendants had been in progress for three days and after Hernandez and Lamelas made the choice to leave their trial, the district court concluded that Hernandez and Lamelas did not intend to return and proceeded with the trial in their absence.

The correctness of this conclusion was confirmed by the fact that it was some ten months from the jury verdict before defendants were apprehended. Both Hernandez and Lamelas were found guilty of the crimes for which they were charged and despite their conduct during the trial have appealed their judgment of conviction on the basis of their absence and other assignments of error. Finding no error, we AFFIRM.

### FACTS

This case originated from a purported "buy" of three kilograms of cocaine by special agents of the Drug Enforcement Administration (DEA) from co-defendant James Milton Wilhite. A confidential informant made contact with Wilhite in the fall of 1985 and introduced Wilhite to DEA special agent Peter McCormick, acting in an undercover capacity as a member of a group of investors interested in purchasing cocaine. There were numerous telephone

Gregory C. Denaro, Richard Docobo, Coral Gables, Fla., for Hernandez.

[*] District Judge of the Eastern District of Texas, sitting by designation.

conversations and some small drug transactions. Ultimately, arrangements were made to purchase several kilograms of cocaine from Wilhite and his associates for approximately $40,000.00 per kilogram on December 30, 1985.

The first kilogram was delivered at the Kroger Shopping Center at Interstate 45 and FM 517 in Dickinson, Texas, between Houston and Galveston. When the delivery was effected, Wilhite and another co-defendant, Robert Edward Hillman, were arrested. In addition to seizing one kilogram of cocaine at this time, among other things, the agents also seized two motel room keys to room 319 at the LaQuinta Motor Inn at 9902 Gulf Freeway in Houston.[1]

Wilhite cooperated with the special agents and consented to the search of room 319 which he had earlier rented at the LaQuinta Motor Inn. Pursuant to this search, another one-kilogram package of cocaine was found inside the room on which Hernandez' and Lamelas' fingerprints were found. Shortly thereafter, and while Wilhite and the special agents were at the LaQuinta Motor Inn, Hernandez and Lamelas arrived at the motel in a silver Nissan automobile. Lamelas got out of the car and began to walk up the outside stairs of the motel. However, he returned quickly to the car in response to a horn signal by Hernandez, the driver of the automobile. Wilhite then went on to the balcony and there were brief shouted words between him and the occupants of the car. Wilhite then went down the stairs and talked to the occupants of the car. Hernandez and Lamelas apparently became suspicious and began to drive out of the parking lot. At this point, the arrest signal was given and a high-speed chase ensued. Finally the Nissan automobile was blocked by traffic and the agents were able to close in and effect the arrest of Hernandez and Lame-

las. Among other things, more than $14,000.00 in cash was found in the defendants-appellants' possession, as well as a small quantity of marijuana and a "ledger sheet."[2]

Hernandez and Lamelas were charged in two counts of a four-count indictment with conspiracy to possess more than one kilogram of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 and 841(a)(1) (Count I), and with possession of such cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count IV). Hernandez and Lamelas were tried as co-defendants along with Wilhite and Hillman. On May 10, 1986, Hernandez and Lamelas were found guilty in absentia of the two counts with which they were each charged.[3] A sentence of ten years imprisonment was imposed upon Hernandez on each count, to be served concurrently, and to be followed by a special parole term of three years on Count IV. A sentence of five years imprisonment was imposed upon Lamelas on each count, to be served concurrently, and to be followed by a special parole term of three years on Count IV.

## TRIAL IN ABSENTIA

Hernandez and Lamelas both contend that the District Court erred in continuing the trial in their absence without making an inquiry into the likelihood that the trial could take place soon in their presence; further inquiring as to the burden, if any, that a second trial would place on the government and its witnesses and whether defendants-appellants were absent voluntarily.

■ A trial court may proceed with a trial when a defendant, who is initially present, voluntarily absents himself after the trial has commenced. Fed.R.Crim.P. 43(b).[4] However, as this court stated in

---

1. Testimony revealed the presence of Hernandez' fingerprint on the plastic bag containing this kilogram of cocaine.

2. "Ledger sheet" was an account of drug transactions.

3. Co-defendant Hillman was acquitted of all charges and co-defendant Wilhite was convicted on all counts with which he was charged.

4. "The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered

*United States v. Benavides,* 596 F.2d 137, 139 (5th Cir.1979):

The finding that the defendants' absence was voluntary should not have abruptly ended the court's inquiry. In *Smith v. United States,* 5 Cir.1966, 357 F.2d 486, 490, we noted that the court has 'only a narrow discretion' in deciding whether to proceed with a trial when the defendant is voluntarily *in absentia* because the right to be present at one's own trial must be carefully safeguarded. *Compare United States v. Davis,* 7 Cir. 1973, 486 F.2d 725, 727, *cert. denied,* 1974, 415 U.S. 979, 94 S.Ct. 1569, 39 L.Ed.2d 876.

In exercising this narrow discretion, the trial court must weigh the likelihood that the trial could soon take place with the defendants present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, particularly in multiple-defendant trials; and inconvenience to jurors. *Benavides, supra,* 596 F.2d at p. 139; *United States v. Beltran–Nunez,* 716 F.2d 287, 290 (5th Cir. 1983).

██ In this case, testimony began on April 30, 1986. The trial court recessed until May 2, 1986, on which day further testimony was given. The trial court then recessed until Monday, May 5, 1986 at which time counsel for Hernandez and Lamelas informed the Court that his clients were absent. A recess was taken and the attorney for defendants-appellants attempted to discover their whereabouts; Hernandez' wife reported to him that Hernandez had left her house the previous evening to go to Galveston to meet with Lamelas who was staying at the Holiday Inn Motel. At this time, the government moved for a continuation of the trial in absentia, and the defendants-appellants' attorney moved for a mistrial. Out of an abundance of precaution, the district court recessed the trial until the next day, giving the defendants-appellants an opportunity to appear or to

to have waived the right to be present whenever a defendant, initially present,

    (1) is voluntarily absent after the trial has commenced (whether or not the defendant

inform the court of the reason for their absence.

On May 6, 1986, the attorney for Hernandez and Lamelas informed the district court that he knew nothing further about his clients' actions or where they might be located. The district court ascertained from the U.S. Marshal that Lamelas had checked out of his room at the Holiday Inn at 5:06 p.m. on the preceding Friday, May 2, 1986. The district court was further informed that numerous calls had been made by Lamelas to Miami, Florida, and one call in particular was made by Lamelas to "Muse Air" shortly before he checked out of his motel. Based on the above, the district court was justified in concluding that Hernandez and Lamelas had made the choice not to continue to be present for their trial; further that an additional recess or delay would not be productive.

The district court postponed the trial long enough and made an adequate and sufficient examination to determine that Hernandez and Lamelas intentionally and voluntarily absented themselves from the trial and that there was little likelihood of their returning or being captured in the near future. Accordingly the district court did not abuse its discretion in continuing the trial in the absence of defendants-appellants.

### DENIAL OF JOINT MOTION FOR SEVERANCE

Defendants-appellants, Hernandez and Lamelas, both contend that the district court erred in denying their joint motion for severance of defendants and in failing to conduct a *Garcia* hearing.

On April 28, 1986, counsel for Hernandez and Lamelas advised the court that he had recently been provided with additional discovery, specifically an audio tape, which created a conflict of interest between his clients. At that time, he filed a joint motion for severance of the trials of Hernan-

has been informed by the court of the obligation to remain during the trial)...."

dez and Lamelas, based on antagonistic defenses, and additionally filed a motion to suppress the tape on behalf of Lamelas.

The tape was of a telephone conversation between Hernandez and Wilhite, which occurred after the arrest of Wilhite and before the arrest of Hernandez and Lamelas. According to defendants' counsel, the taped conversation between Hernandez and Wilhite was exculpatory as to Hernandez and inculpatory as to Lamelas. The district court denied the joint motion for severance. Although the district court further denied Lamelas' motion to suppress the tape, during the trial it ruled that the tape was not admissible into evidence.

As this court stated in *United States v. Bruno*, 809 F.2d 1097, 1103 (5th Cir.1987):

> The test for severance because of antagonistic defenses is "the essence or core of the defenses must be in conflict such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other."

Quoting *United States v. Lee*, 744 F.2d 1124, 1126 (5th Cir.1984); *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir. 1984). This Court has further held in *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir.1984), that the severance decision is reviewed under an abuse of discretion standard, and to prove an abuse the defendant undertakes the considerable burden of proving "that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *Cf. United States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir. 1981); *United States v. Lee*, 744 F.2d 1124, 1126 (5th Cir.1984).

As the district court ultimately ruled, the tape, as well as testimony regarding its substance, was not admissible because such evidence constituted hearsay. Neither Hernandez nor Lamelas has shown "that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection."

Hernandez and Lamelas further assert that the district court erred in failing to conduct a *Garcia* hearing. Fed.R.Crim.P. 44(c).[5] A *Garcia* hearing was in fact held at the initial appearance in court of Hernandez and Lamelas on December 31, 1985, at which time their counsel advised that he did not see any conflict in representing the two defendants. Hernandez and Lamelas at that time waived their right to independent counsel and executed a *Garcia* waiver. The only possible question now is whether the *Garcia* waivers executed by Hernandez and Lamelas remained effective after the discovery of the tape alluded to in their joint motion for severance.

Hernandez, being a participant in the taped conversation with Wilhite, obviously knew of the existence of the conversation at the time that he executed his waiver and such waiver remained valid. Although Lamelas did not necessarily have any knowledge of the conversation prior to his attorney's discovery of the tape, he filed a motion through his counsel to suppress and no conflict existed because the tape in question was not admitted in evidence and joint counsel was not placed in a position of having to make a choice between his clients and properly presenting their defense. There was no need for the district court to take any further measures pursuant to Federal Rule 44(c) and the defendants-appellants' joint motion for severance was properly denied.

### REQUESTED SEVERANCE FROM CO-DEFENDANT WILHITE

■ Both Hernandez and Lamelas assert that the district court erred in denying their motions for severance from co-defend-

---

**5.** Fed.R.Crim.P. 44(c) *Joint Representation.* Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

ant Wilhite, and Lamelas additionally contends that the district court erred in effectively admitting into evidence post-arrest statements of Wilhite. As noted earlier, the trial court's decision regarding severance is reviewed under an abuse of discretion standard, and to prove an abuse the defendant undertakes the considerable burden of proving "that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *United States v. Lee, supra.*

Hernandez argues that had a severance been granted, Wilhite could have testified in his favor. To establish a prima facie case for severance to introduce exculpatory testimony of a co-defendant, the movant must establish: 1) a bona fide need for the testimony; 2) the substance of the testimony; 3) its exculpatory nature and effect; and 4) that the co-defendant would testify if severance were granted. *United States v. DeSimone,* 660 F.2d 532, 539 (5th Cir. 1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982), 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *United States v. Daly,* 756 F.2d 1076, 1080 (5th Cir.1985), *cert. denied* 474 U.S. 1022, 106 S.Ct. 574, 575, 88 L.Ed.2d 558 (1985).

There is no evidence in the record which indicates that Wilhite would have testified on behalf of Hernandez had a severance been granted. Since Hernandez has therefore failed to make out a prima facie case for severance to introduce Wilhite's purported exculpatory testimony, the district court did not abuse its discretion in denying Hernandez' motion for severance from Wilhite. Lamelas has not made any argument in support of his contention that the district court erred in denying his motion for severance from co-defendant Wilhite, and we conclude that his contention is also without merit.

Lamelas further asserts that the district court erred in effectively admitting. into evidence post-arrest statements of non-testifying co-defendant Wilhite, in violation of his Sixth Amendment right of confrontation. Specifically, Lamelas contends that by allowing surveillance agents to testify that they were on the lookout for the "source" that would be arriving in a silver foreign car with two Latin males, and that the occupants would be going to room 319, the district court effectively admitted into evidence Wilhite's post-arrest statements.

■ The confession of a non-testifying co-defendant is admissible only against himself and only if it does not implicate his co-defendants. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Clark v. Maggio,* 737 F.2d 471, 476 (5th Cir.1984). In the present case, however, the district court excluded the alleged confession of Wilhite altogether. We reject Lamelas' complaints that the testimony by the surveillance agents regarding their lookout for two males in a foreign car indirectly informed the jury of Wilhite's post-arrest statements. Any error in this regard was clearly harmless in light of the record as a whole. Further, Lamelas' interpretation is strained and the questioned testimony was in no way alluded to by the government in argument. Moreover, the court instructed the jury not to consider any defendant's out-of-court statements to interrogators against any other defendant, and the only mention of 'source' was in unobjected-to testimony by a government agent on cross-examination in reference to the purpose of the motel investigation generally.

## ADMISSIBILITY OF TAPE

■ Hernandez asserts that the district court erred in disallowing testimony and evidence of the tape-recorded conversation between himself and Wilhite and contends that such evidence was admissible pursuant to Fed.R.Evid. 803(3). Hernandez argues that the purpose of attempting to introduce the tape or evidence regarding the conversation between himself and Wilhite was to show that his state of mind, when he went to the LaQuinta Motor Inn, was not to participate in a drug deal but simply to give Lamelas a ride.

Fed.R.Evid. 803(3) provides, in relevant part, that "a statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent,

plan, motive, design, mental feeling, pain and bodily health)" is not excluded by the hearsay rule, even though the declarant is available as a witness. Contrary to Hernandez' contention, the tape in question does not contain any statement indicating that Hernandez' state of mind was not to participate in a drug deal but simply to give Lamelas a ride.

We conclude that the district court correctly analyzed the content of the tape as constituting hearsay and properly denied admission of the tape into evidence.

## DENIAL OF MOTION TO SUPPRESS

Both Hernandez and Lamelas assert that the district court erred in denying their motions to suppress all evidence obtained by the government as a result of the stopping of their automobile and their arrest. Specifically, the defendants argue that their arrest and the resulting search of their persons and automobile were made without probable cause, and that the fruits of the search should not have been admitted into evidence.

The district court held a hearing in regard to the defendant's motion to suppress, during which time special agent McCormick testified in detail as to the events which led to the arrest of Hernandez and Lamelas, including Wilhite's statement to him that his "source" would be arriving in a silver foreign automobile and the defendants' subsequent arrival at the motel in such an automobile.

"Probable cause to arrest exists when the facts and circumstances known at the time are sufficient to cause a reasonable law enforcement officer to believe that a crime has been or is being committed." *United States v. Martinez*, 808 F.2d 1050, 1055 (5th Cir.1987), cert. denied, —— U.S. ——, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987) (footnote omitted). It is well settled that "the considerations involved in dealing with probable cause are not technical ones, but rather factual and practical ones of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Maldonado*, 735 F.2d 809, 815 (5th Cir.1984) (citation omitted). In this case, there being probable cause for the arresting officers to believe that Hernandez and Lamelas had committed or were committing an offense, the district court properly overruled the motion to suppress evidence obtained as a result of the arrest of the defendants.

## SUFFICIENCY OF EVIDENCE

■ Lamelas contends that the evidence was insufficient to support his conviction. In reviewing this contention, "we must consider all the evidence direct and circumstantial, in the light most favorable to the jury's verdict, accepting all reasonable inferences and credibility choices in favor of the verdict." *United States v. Maldonado*, *supra*, 735 F.2d at p. 817.

As noted earlier, Lamelas' fingerprint was found on the package of cocaine located in Wilhite's motel room. This fact, combined with Lamelas' arrival at the LaQuinta Motor Inn, his conversation with Wilhite and his subsequent flee from the scene with Hernandez to avoid arrest, constitutes ample evidence from which the jury could find him guilty beyond a reasonable doubt of the crimes with which he was charged. Accordingly Lamelas' contention regarding insufficiency of the evidence has no merit.

## FAILURE TO INSTRUCT

Hernandez and Lamelas contend that the district court committed fundamental error in failing to instruct the jury as requested on their theory of defense, namely, that their possession of the cocaine, if any, was momentary and transient and without criminal intent. Denominating a proposed jury instruction a theory of defense does not automatically require that it be given. *United States v. Goss*, 650 F.2d 1336, 1344 (5th Cir. Unit A 1981). Before the trial court is required to give a criminal defendant's prepared instruction, there must be an underlying evidentiary foundation to support the defendant's theory of defense. *Id.*

■ Although Hernandez and Lamelas state what their theories of defense were, the record is void of any evidence that

indicates that their possession of the bag of cocaine (as evidenced by their fingerprints found thereon) was momentary and transitory, and without criminal intent. Accordingly, the district court did not err in failing to give Hernandez' and Lamelas' requested jury instruction.

## ADMISSION OF CERTAIN EVIDENCE

Hernandez contends that the district court erred in permitting the introduction into evidence of extrinsic crimes including marijuana, accounting records and testimony as to air travel. This contention is totally without merit and this assignment of error is overruled.

For the foregoing reasons, the convictions of defendants-appellants Herenandez and Lamelas are AFFIRMED.