(817 P.2d 1124)

No. 65,559

STATE OF KANSAS, *Appellee,* v. JOHN F. GALLOWAY, *Appellant.*

Opinion filed September 20, 1991.

*Elizabeth Sterns*, assistant appellate defender, *Michael L. McCoy*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Jeffrey E. Goering*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before RULON, P.J., REES and BRAZIL, JJ.

RULON, J.: John F. Galloway, defendant, appeals his conviction of one count of possession of cocaine, K.S.A. 1990 Supp. 65-4127a, arguing the district court: (1) violated his statutory and constitutional rights when it held he was voluntarily absent and proceeded with the last day of trial; and (2) abused its discretion in admitting a black pouch into evidence. We affirm.

With regard to the black pouch, Galloway testified that he knew his companion Lester Shine had it, but he did not know what was in it. However, later in his testimony, Galloway stated that the only time he saw Shine with the pouch was when Shine removed it from Shine's car.

At the end of the first day of trial and after the presentation of all the evidence, the court adjourned the proceedings until the following day. The next day, Galloway did not appear in court. A jury instruction conference was conducted between the parties and the court. Defense counsel moved that a mistrial be ordered because Galloway was absent. Finding that Galloway was voluntarily absent, the court denied the motion.

## DEFENDANT'S ABSENCE

Galloway argues that, in finding he was voluntarily absent, the district court did not make sufficient inquiry as to the circumstances causing the absence. At the hearing on Galloway's post-trial motion for judgment of acquittal or a new trial, the court found that Galloway was absent from the trial because he had gone to the hospital. However, because Galloway failed to notify the court and his counsel of his whereabouts, the court refused

to order a new trial. Contrary to the court's finding that Galloway had gone to the hospital, there is no evidence in the record establishing that Galloway was in a hospital.

Speaking generally on a defendant's right to be present in court during criminal proceedings, we have said:

"[A] criminal defendant has the absolute right to be present at all stages of the prosecution against him. This right is guaranteed by the Sixth Amendment to the United States Constitution, which provides that: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . .' The Fourteenth Amendment makes this guarantee obligatory upon the states. [Citation omitted.] It has been held that the right of the accused to be present at trial is one of the most basic rights preserved by the Constitution. [Citation omitted.]

"However, a criminal defendant may not impede or prevent the continuation of his trial by simply choosing to voluntarily absent himself from the proceedings. This exception to the rule that a defendant must be present at trial was first recognized in case law.

" 'We have many times held that these rights may be waived by the accused, even in felony cases, and that voluntary absence may be deemed to be such a waiver. Thus a felony trial commenced when the defendant was present could be concluded and a verdict received in his absence when it was shown that the defendant, free on bond, had fled the jurisdiction.' [Citations omitted.]" *State v. Hartfield*, 9 Kan. App. 2d 156, 160-61, 676 P.2d 141 (1984).

Thus, although the Sixth Amendment to the United States Constitution allows the defendant the right to be present, this right can be waived. See *U.S. v. Rogers*, 853 F.2d 249, 252 (4th Cir. 1988). However, the trial " 'court has "only a narrow discretion" in deciding whether to proceed with a trial when the defendant is voluntarily *in absentia* because the right to be present at one's own trial must be carefully safeguarded.' " *U.S. v. Hernandez*, 842 F.2d 82, 85, *reh. denied* 846 F.2d 752 (5th Cir. 1988).

K.S.A. 22-3405, in relevant part, provides:

"(1) The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law. In prosecutions for crimes not punishable by death, the defendant's *voluntary absence after the trial has been commenced* in such person's presence shall not prevent continuing the trial to and including the return of the verdict." (Emphasis added.)

Here, the question raised concerned what constitutes a voluntary absence. In *State v. Sandstrom*, 225 Kan. 717, 721-22,

595 P.2d 324, *cert. denied* 444 U.S. 942 (1979), the court noted that counsel for the defendant waived the defendant's right to be present. In considering waiver, the court noted that Sandstrom was free on bond and was not in custody at the time she was required to appear. 225 Kan. at 721. The court further noted "[t]here is nothing to show that she was prevented from being present or that she could not have been present had she desired to do so." 225 Kan. at 721.

In *State v. Kelly*, 213 Kan. 237, 515 P.2d 1030 (1973), the issue addressed by the court was whether a defendant can be sentenced *in absentia*. 213 Kan. at 241. Although sentencing *in absentia* is not challenged here, dicta in *Kelly* clearly indicates that voluntary absence can be found when the defendant has fled the jurisdiction while free on bond. 213 Kan. at 241.

Therefore, based on these prior decisions, voluntary absence can be found when the defendant, released on bond, is not in custody and was not prevented from being present. There does not appear to be any requirement that *the court* inquire as to why the defendant is absent or whether someone has tried to contact or locate the defendant.

Galloway, as we understand, is requesting this court to hold that some inquiry must be made by the trial court before it can determine that a defendant has voluntarily waived his right to be present. Due to the limited discussion of voluntary absence in our case law, decisions of other jurisdictions may provide assistance in analyzing the subject. The Judicial Council Comments to K.S.A. 22-3405 note the Kansas statute is modeled after both Fed. R. Crim. Proc. 43 and Mont. Code Annot. § 95-1904 (1947).

The present version of the Montana provision is found at Mont. Code Annot. § 46-16-108 (1989). Examination of that statute reveals that it does not speak of "voluntary absence"; therefore, reliance on cases interpreting that statute is not warranted. Accordingly, we turn to consideration of judicial interpretations of the federal rule.

Fed. R. Crim. Proc. 43(b)(1) (1991 Supp.) provides:

"The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

"(1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial)."

As noted by Wright, "The purpose of this is to prevent the defendant from obstructing the trial by absconding. If defendant is voluntarily absent, the court may continue the trial up to and including the return of the verdict. Defendant's absence must be found to be voluntary." 3A Wright, Federal Practice and Procedure: Criminal § 723, p. 21 (1982).

In *U.S. v. Rogers*, 853 F.2d 249, the defendant was absent on the second day of trial for about 50 minutes. 853 F.2d at 251. During that time, three witnesses were called. 853 F.2d at 251. Although the district court ordered the transcripts to be available the next day and also allowed the defendant to recall the witnesses, the circuit court found error. 853 F.2d at 251-52. That court noted a district court faced with such a problem

"should try to find out where the defendant is and why he is absent, and should consider the likelihood the trial could soon proceed with the defendant, the difficulty of rescheduling and the burden on the government. [Citations omitted.] Typically, these factors will favor proceeding without the defendant in multi-defendant trials only. [Citation omitted.]" *Rogers*, 853 F.2d at 252.

See also *Hernandez*, 842 F.2d at 85. ("In exercising [its discretion], the trial court must weigh the likelihood that the trial could soon take place with the defendants present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, particularly in multiple-defendant trials; and inconvenience to jurors.")

In applying the law to the facts, the *Rogers* court held: "The court below inquired of defense counsel regarding Rogers' whereabouts, but did nothing else. This is not sufficient to establish a waiver of his Rule 43 right, particularly in a single defendant trial, and the court abused its discretion by proceeding without further investigation." 853 F.2d at 252.

The test outlined in *Rogers* was taken substantially from *United States v. Tortora*, 464 F.2d 1202 (2d Cir.), *cert. denied sub nom. Santoro v. United States*, 409 U.S. 1063 (1972), and has been called the "complex of issues" test. *United States v. Sanchez*, 790 F.2d 245 (2d Cir.), *cert. denied* 479 U.S. 989 (1986). In ruling

that the district court did not abuse its discretion in proceeding with the trial *in absentia*, the *Sanchez* court stated:

"It is enough that, in a case with more than one defendant, Sanchez waived his right to be present by failing to appear without explanation and while on bail; that some reasonable steps, including a one-day continuation with notification to his attorney and this issuance of a bench warrant, were taken unsuccessfully in response to his non-appearance; that there was no reason to believe that the trial could likely soon be held with Sanchez present; and that severance would impose on the Government the burden of prosecuting two separate trials that would involve substantially the same evidence." 790 F.2d at 251.

The *Sanchez* court also noted that the "complex of issues" test has been expanded to include single-defendant cases. 790 F.2d at 250. However, in single-defendant cases, the factors are not as easily satisfied as in multi-defendant cases. See *Rogers*, 853 F.2d at 252.

Several state courts have had the opportunity to address the present subject under similar factual circumstances. *Gulledge v. State*, 526 So. 2d 654, 656 (Ala. Crim. App. 1988) (defendants found voluntarily absent where judge had informed them case to proceed at 9:00 a.m. following day); *State v. Hammond*, 231 N.J. Super. 535, 542, 555 A.2d 1169 (1989) (proceeding in defendant's absence not prejudicial when defendant knew time he was to be present and failed to have an excuse for absence); *People v. Whitehead*, 143 A.D.2d 1066, 533 N.Y.S.2d 753 (1988) (defendant waived right to be present where he was told time at which to appear yet failed to do so); *People v. Collins*, 137 A.D.2d 542, 524 N.Y.S.2d 283 (1988) (where defendant failed to appear on third day of trial, and court directed that inquiries be made at area hospitals, inquired as to possible rearrest, and issued bench warrant for defendant's arrest, and efforts at locating defendant at residence or at residences of family and friends unsuccessful, proceeding *in absentia* upheld); *Royal v. State*, 761 P.2d 497, 498-99 (Okla. Crim. 1988) (defendant found voluntarily absent where an arrest warrant was issued, sheriff searched two residences, courthouse premises were searched, and defense attorney, bondsman and family were unable to provide clues as to whereabouts); *Nauls v. State*, 762 S.W.2d 336, 338 (Tex. Crim. 1988) (proceeding *in absentia* upheld where defendant informed

as to time he needed to appear, failed to communicate to court or counsel why he was absent, and clerk of court had instructed defendant in telephone conversation on date of absence to come to court "immediately").

Our case is a single-defendant case. The trial court inquired of defense counsel as to the whereabouts of Galloway. Counsel informed the court that, upon his inquiries, he was informed Galloway was not in either of two local hospitals, nor was he in custody at the county jail. Defense counsel also called the residence of Galloway's parents, but was unable to learn any relevant information as to Galloway's location. Further, the court delayed the proceedings for well over one hour in an effort to assure Galloway's rights would not be violated.

Galloway was present during the first day of trial. Although he was not specifically informed by the court as to when on the second day trial would proceed. the record discloses that the court, in the defendant's presence, advised the jurors that they were to return at 9:30 the following day. Further, counsel for Galloway reported that he advised his client the trial would start at 9:30 a.m. the following day, but that Galloway should arrive at 9:00 a.m. to discuss some matters. Nowhere in the record is there any showing that Galloway tried to contact the court the morning of the second day of trial to inform anyone of his whereabouts and why he would be absent.

In contrast to those factors weighing in favor of a finding of a voluntary absence, we note that although defense counsel checked two local hospitals, there are more than two active hospitals in the Wichita vicinity. Additionally, although the county jail was checked, it is possible for a person to be in custody but not yet be placed in jail.

While the district court did not exhaust every means available to locate Galloway, it is clear that the court did more than simply proceed with the trial without first causing inquiry to be made. The mere fact that such an inquiry was directed at Galloway's counsel does not negate the fact that some information was available to the trial court in order to make a reasoned judgment. Although a trial court can seek to obtain information through its own efforts, this is not a requirement.

Based on the evidence presented, we cannot say the district court abused its discretion in proceeding *in absentia*. Further, even if this court were to hold that the court erred, such error was harmless.

"The record should affirmatively show the presence of the defendant at every stage of the trial. Unless defendant has effectively waived his right to be present, nothing done in his absence is of legal effect and reversal of his conviction is required unless there was no reasonable possibility of prejudice [*sic*] defendant from his absence, in which case the error may be regarded as harmless." 3A Wright, § 721, pp. 8-9.

See also *Rogers*, 853 F.2d at 252 (a Rule 43 violation is subject to harmless error analysis).

"An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. [Citations omitted.] Thus, before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. [Citation omitted.]" *State v. White*, 246 Kan. 28, 37, 785 P.2d 950 (1990).

Galloway argues the error was not harmless because "absence from the courtroom during instructions and closing arguments would lead impermissibly to conclusions on the part of the jury" that would harm his credibility. If this argument is accepted, then harmless error is never applicable in cases where the defendant was absent. Clearly, harmless error can be applied.

We note that no testimony was heard in Galloway's absence. The portion of the trial proceedings that occurred in Galloway's absence included the reading of the jury instructions and closing arguments by counsel. Galloway does not contend that he was harmed by either the instructions given or the closing arguments by counsel. See *Royal*, 761 P.2d at 498-99 (in voluntary absence determination, court considered that defendant present when evidence presented); *Gelsey v. State*, 565 So. 2d 876, 878 (Fla. Dist. App. 1990) (where defendant claimed absence during closing argument prejudicial, court affirmed conviction, noting defendant present during opening of trial, evidentiary phase, jury deliberations and pronouncement of sentence, and that no prejudicial comments were made during closing argument); *State v. Hammond*, 231 N.J. Super. at 541 (defendant present at evidence-

producing portion of trial). Further, the jury was instructed that it was to determine the case on the evidence that was admitted and it was not to be influenced by anything not within the evidence and issues of the case.

We are convinced that the trial court did not err in refusing to order a mistrial, but if error did occur, it was harmless.

## THE BLACK POUCH

"A trial judge has discretion to exclude evidence when its probative effect is outweighed by its prejudicial effect on the jury." *State v. Martin*, 237 Kan. 285, 289, 699 P.2d 486 (1985). "Probative evidence is evidence that tends to prove an issue; it furnishes, establishes or contributes toward proof." *State ex rel. Hausner v. Blackman*, 7 Kan. App. 2d 693, 698, 648 P.2d 249 (1982), *aff'd* 233 Kan. 223, 662 P.2d 1183 (1983).

"The scope of appellate review is whether the trial court's ruling was an abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. All judicial discretion must thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." *Martin*, 237 Kan. at 290.

Galloway was convicted of possession of cocaine. At trial, an exhibit admitted into evidence was a piece of crack cocaine found by Officer Bachman after he observed Galloway throw an object to the ground. Also admitted into evidence as an exhibit was a black pouch that Shine removed from his car and which had cocaine residue in it.

Galloway argues that the introduction of the pouch served no probative purpose. He points out that the crime of possession of cocaine requires the specific intent to control the substance, and there was no evidence Galloway had such intent with regard to the pouch. Further, Galloway notes that the only link between this pouch and the State's case was that Galloway was standing next to the car from which Shine produced the pouch.

The jury was instructed that to establish a violation of the Uniform Controlled Substances Act, it must be found "1. That

the defendant possessed a narcotic drug known as cocaine; [and] 2. That the defendant did so intentionally." See PIK Crim. 2d 67.13.

An additional instruction defined the term "possession" in the following manner:

"Possession . . . is to have control with the knowledge and intent of being able to exercise direction over a substance or thing.

"Possession may be exclusive or held jointly with others.

"Possession may be actual or constructive with the power and right to dispense or dispose of the substance or thing."

See *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989).

Based on the instructions provided and the evidence presented at trial, it is possible that Galloway was convicted of possession of cocaine as a result of constructive possession of the cocaine found in the pouch. This court recently discussed constructive possession in *State v. Cruz*, 15 Kan. App. 2d 476, 809 P.2d 1233 (1991). We said:

" 'Possession of a controlled substance requires having control over the substance with knowledge of and the intent to have such control. Knowledge of the presence of the controlled substance with the intent to exercise control is essential.

" 'Control as used in K.S.A. 65-4127a means to exercise a restraining or directing influence over the controlled substance.' *State v. Flinchpaugh*, 232 Kan. 831, Syl. ¶¶ 1, 2.

See *State v. Washington*, 244 Kan. 652, 654.

" ' " 'Possession' " of [a controlled substance] is having control over the [controlled substance] with knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence. [Citation omitted.] Possession may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. [Citation omitted.]' " ' *State v. Rose*, 8 Kan. App. 2d 659, 664, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983) (quoting *State v. Bullocks*, 2 Kan. App. 2d at 49-50).

" 'When a defendant is in nonexclusive possession of premises on which drugs are found, the better view is that it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs. [Citation omitted.] Such parallels the rule in Kansas as to a defendant charged with possession of drugs in an automobile of which he was not the sole occupant [*State v. Faulkner*, 220 Kan. 153, 551 P.2d 1247 (1976).] Incriminating factors noted in *Faulkner* are a defendant's previous participation in the sale of drugs,

his use of narcotics, his proximity to the area where the drugs are found, and the fact that the drugs are found in plain view. Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of defendant's possession to the drugs. [Citation omitted.]' " *State v. Cruz*, 15 Kan. App. 2d at 488-89.

In our case, Galloway testified that, before his arrest, he spent a good portion of the night in the car and he never left the presence of the vehicle for an extended period of time. Police officers testified that prior to and at the time of his arrest, Galloway was observed standing next to the vehicle in which the pouch was found. While a portion of Galloway's testimony indicates that he did not know the pouch was present in the car, another portion of the testimony clearly indicates that Galloway knew Shine had the pouch but did not know of its contents. Officer Bachman testified that he saw Galloway throw what he believed was crack cocaine to the ground just prior to his arrest. The presence of the crack cocaine tends to show prior participation in drug activity. The pouch was removed by Shine from the front seat of a car in which Galloway had spent a good portion of the night. Finally, the pouch contained cocaine residue.

Based on the facts, the pouch was both relevant and probative to the charge of possession of cocaine. It reasonably could have been determined by a jury that not only did Galloway possess the cocaine rock found on the ground, but that he also possessed the cocaine residue found in the pouch. We are satisfied the trial court did not abuse its discretion in admitting the pouch into evidence.

Affirmed.