NOT DESIGNATED FOR PUBLICATION

No. 127,261

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEQUALYN A. SHAFFER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRYSTAL KRIER, judge. Submitted without oral argument. Opinion filed January 30, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., HILL, J., and JOAN M. LOWDON, District Judge, assigned.

PER CURIAM: Dequalyn A. Shaffer appeals his conviction for felony fleeing or attempting to elude with five or more moving violations. His conviction results from a high-speed chase by law enforcement through the city of Wichita and on the interstate and ended only when Shaffer drove his vehicle over a retaining wall.

Shaffer raises four arguments on appeal. First, he argues the district court erred by denying his request to proceed pro se. Second, he argues that the lack of a jury instruction for the lesser included offense of misdemeanor fleeing or attempting to elude was clear

1

error that requires reversal of his conviction. Third, he argues his appearance at trial in an orange jumpsuit without a limiting jury instruction tainted his right to the presumption of innocence and the jury should have been instructed to cure that error. Fourth, he argues the district court erred by not appointing conflict-free counsel at a hearing on a posttrial motion regarding the ineffective assistance of his attorney. Yet our careful analysis below of these claims of error shows no reversible error.

FACTUAL AND PROCEDURAL BACKGROUND

On a November evening in 2022, Wichita Police Department officers were surveilling Shaffer's residence, looking for Shaffer's minor daughter who had run away. Officers suspected she was with her father.

During the surveillance, two officers—Codie Trobaugh and his patrol partner Nick Jones—communicated to a detective that they had seen Shaffer come out of the residence a short time after a minor child came out of the residence. That detective called Shaffer's parole officer and informed her of the contact Shaffer appeared to have had with a minor, which violated his parole. Shaffer's parole officer responded that she planned to issue an arrest and detain order (A&D) because Shaffer had violated his parole.

The A&D was transmitted to Jones and Trobaugh, who were still in the area conducting surveillance, looking for Shaffer. When the officers stopped at a red light, Jones looked over and saw Shaffer driving a white Chevy SUV, alone in the vehicle.

Jones identified Shaffer from a picture he had pulled up on his laptop inside the patrol vehicle. Trobaugh then activated the vehicle's emergency lights to pull Shaffer over because of the A&D. Upon seeing the police lights, Shaffer pulled into a private parking lot and stopped. But as Jones and Trobaugh exited the patrol vehicle and began approaching his SUV, Shaffer "took off at a high rate of speed."

2

Jones and Trobaugh ran back to their patrol vehicle and pursued Shaffer with lights and sirens on. During the pursuit, which lasted about six minutes, officers saw Shaffer run at least six red lights or stop signs, fail to signal at least five times, and reach a speed of at least 70 miles per hour on city streets.

Shaffer eventually got on southbound I-135, driving as fast as 100 miles per hour as he repeatedly veered from lane to lane, weaving through traffic. He briefly got on the exit ramp for Kellogg before veering back onto southbound I-135 at the last moment. He then slowed down and pulled onto a grassy area beside the interstate. But he shortly reentered the interstate and took off quickly, driving the wrong way on a ramp to southbound I-135. This forced an oncoming vehicle to pull to the side of the ramp to avoid a collision. Shaffer then pulled back onto the grass and headed west for a short distance before driving his SUV over a retaining wall.

Although the SUV fell 10 to 12 feet before crashing on to the ground, Shaffer refused to exit his vehicle for about 20 minutes. Shaffer was eventually taken into police custody. After being informed of his rights, he told Jones that he had fled because he did not have a driver's license and was scared because he was on parole.

The State charged Shaffer with three alternative counts of felony fleeing or attempting to elude an officer, under K.S.A. 8-1568. Count one was based on him knowingly driving the wrong way into an opposing lane of traffic on a divided highway, contrary to K.S.A. 8-1568(b)(3). Count two alleged that he engaged in reckless driving, contrary to K.S.A. 8-1568(b)(1)(C). Count three asserted that he committed five or more moving violations during the pursuit, contrary to K.S.A. 8-1568(b)(1)(E).

Jones and Trobaugh were the only witnesses at trial. Body cam footage from both officers captured the pursuit and was admitted into evidence and played for the jury. Trobaugh's body cam footage began at the initial contact with Shaffer and showed the

3

entire pursuit. Jones' body cam began approximately three minutes into the officers' encounter with Shaffer.

After deliberations, the jury convicted Shaffer of counts two and three and acquitted him of count one. The district court dismissed count two, which was an alternative to count three, and sentenced Shaffer to 16 months' imprisonment on count three—fleeing or attempting to elude an officer predicated on five or more moving violations.

Shaffer timely appeals.

ANALYSIS

I.   *Did the district court abuse its discretion by denying Shaffer's request to proceed pro se?*

We first address Shaffer's argument that the district court erred by denying his request to proceed pro se. He contends that the district court denied his request as untimely, yet the jury had not yet been sworn in, so his request was timely. Alternatively, he argues that even if the request was untimely, the district court had abused its discretion because it considered only the timing of the request instead of other necessary factors.

*Additional Facts*

The week before trial, Shaffer filed a pro se motion asking the court to remove his counsel based on claims of ineffective assistance of counsel and appoint him a new attorney. At the hearing on that motion, the district court gave Shaffer an opportunity to personally explain the motion. Yet the district court found that Shaffer failed to present any justifiable basis to remove his trial counsel, noting that Shaffer appeared to be

4

blaming counsel for adverse rulings on pretrial motions. The court described counsel as a "very competent, qualified attorney" who represents her clients "to the utmost of her abilities . . . every time."

On the morning of trial, before voir dire began, the district court called counsel into the court's law library to discuss Shaffer's clothing. The district court explained that she had received a call from the Sheriff's Office saying that Shaffer was wearing his orange jumpsuit rather than street clothing. The discussion of Shaffer's clothing is intermingled with Shaffer's request to represent himself.

When the district court asked Shaffer why he had chosen not to change into street clothing for trial, Shaffer failed to answer that question. Rather, he complained that when his trial counsel visited him in jail "a couple of days ago," she had not let him keep the affidavit that she had with her. Shaffer argued that this created a conflict and that he needed to "go pro se and represent [himself]." The district court replied that while Shaffer had a right to represent himself, "case law . . . says when you're getting ready to start a trial, that's too late for you to ask to be able to go pro se."

Shaffer responded that he "didn't know about [any] of this until now," and reasserted his complaint that his trial counsel was "withholding evidence or part of the discovery." He also claimed that his trial counsel had disagreed with his assertion that the alternative charges were multiplicitous. He stated: "I'll go to trial on my own or whatever, but let me prepare myself for a defense. . . . I need to prepare myself for a defense, but I also need a full discovery, too." The district court responded that although defense counsel was entitled to full discovery, Shaffer was not. The district court also told Shaffer that alternatively charged counts are not multiplicitous.

The district court then redirected the conversation to Shaffer's clothing, stating that although Shaffer may be upset with his attorney, wearing jail clothing would only harm

his defense. The district court stated that she would allow Shaffer to proceed to trial in his jumpsuit, but she encouraged him to change into street clothing and offered to provide it. The court then reiterated that the morning of trial was too late to ask to proceed pro se, noting that the jury panel was already present.

Shaffer then addressed his trial counsel, asking if his account of what happened with the affidavit was accurate. Defense counsel told the district court that during their meeting the week before, she had handed the complaint and the affidavit to Shaffer. He was unwilling to return the documents to her but she told Shaffer that she needed them because Odyssey was not working and she did not have any other copies. Counsel then took the affidavit from Shaffer.

When the district court tried once again to resolve the clothing issue, Shaffer replied that he wanted to represent himself. The district court reiterated that his request was untimely, and Shaffer stated that he could use a continuance, opining that "[w]e all have three continuance[s]."

After informing Shaffer that no statute gives each side a specific number of continuances, the district court revisited the clothing issue. Shaffer said that he could secure street clothing but was not sure whether he could get it that day. The court replied, "It has to be today or we can provide you with clothing," but Shaffer responded, "I don't want nothing from you all. I have my own clothes."

The district court then gave Shaffer the option to secure his own clothing within 30 minutes, to have the court provide clothing for him, or to go to trial in his jumpsuit. Shaffer continued to insist that he would represent himself, and the court briefly paused the hearing. After the break, the district court cited two cases to support its ruling that Shaffer's request to proceed pro se was untimely: *State v. Cuddy*, 22 Kan. App. 2d 605,

6

921 P.2d 219 (1996), and *State v. Hallacy*, No. 122,431, 2023 WL 2941533 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. 1088 (2024).

At the conclusion of the conference, Shaffer elected to go to trial in his jail clothing. We discuss Shaffer's clothing in Issue III of this opinion.

*Standard of Review*

Whether a request for self-representation is timely is a legal question that we review de novo. See *Cuddy*, 22 Kan. App. 2d at 610. When reviewing a timely request for self-representation before trial, an appellate court applies unlimited review. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018). But when reviewing an untimely request for self-representation before trial, an appellate court applies an abuse of discretion standard. *State v. Cromwell*, 253 Kan. 495, 505, 856 P.2d 1299 (1993).

*The Timeliness of Shaffer's Request*

A defendant in a state criminal trial has a constitutional right to self-representation. *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006) (citing *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 [1975]). This right is unqualified if timely asserted before trial. *Cromwell*, 253 Kan. at 505 (citing *United States v. Mayes*, 917 F.2d 457, 462 [10th Cir. 1990]). But if a defendant does not ask for self-representation before trial starts, the district court has discretion whether to grant the request. 253 Kan. at 505. Our Kansas Supreme Court has not decided when trial starts for purposes of such a request—the morning of trial, or later, when the jury is impaneled.

*The district court had discretion as to Shaffer's motion for self-representation.*

Shaffer points us to other jurisdictions who have found such motions timely if made before the jury is impaneled. See, e.g., *United States v. Tucker*, 451 F.3d 1176, 1181 (10th Cir. 2006); *United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986).

Yet when denying Shaffer's request, the district court relied on Kansas law established in part in *Cuddy*. We do the same. Cuddy argued, as Shaffer does here, that a motion for self-representation made right before voir dire is timely, so the defendant has an unqualified right to self-representation. 22 Kan. App. 2d at 609. But *Cuddy* rejected that result, holding that defendant had failed to make the motion within a reasonable time before trial, so the district court had the discretion to deny the motion. 22 Kan. App. 2d at 610. That panel explained that a trial court has discretion to deny a motion for self-representation made just before voir dire:

> "Courts from other jurisdictions have taken differing positions concerning day-of-trial and near-day-of-trial motions for self-representation. See generally Annot., 98 A.L.R.3d 13. Two conflicting general rules have emerged. Some courts have established that a motion for self-representation is timely as a matter of law if made before the swearing in of the jury. E.g., *Blankenship v. State*, 673 S.W.2d 578, 585 (Tex. Crim. App. 1984). Other courts have held that, due to the public's interest in the efficient administration of justice, a trial court has discretion regarding a motion for self-representation that was not made within a reasonable time prior to the commencement of trial. E.g., *People v. Hall*, 87 Cal. App. 3d 125, 130-31, 150 Cal. Rptr. 628 (1978). The *Hall* court concluded the trial court had the discretion to deny such a motion made just prior to jury voir dire. 87 Cal. App. 3d at 132.
> "We believe the latter of the two prevailing rules strikes the more reasonable balance between the right to self-representation and the public's interest in the efficient administration of justice. See, e.g., *Hall*, 87 Cal. App. 3d at 131. Such a rule, moreover, vests trial courts with the discretion to prevent the trivialization of two fundamental

constitutional rights—the right to counsel and the right to be heard—into a game of delay tactics." *Cuddy*, 22 Kan. App. 2d at 610.

The district court also relied on *Hallacy*, 2023 WL 2941533, at *2. There, as here, the district court denied defendant's request to represent himself, which was made immediately before voir dire. 2023 WL 2941533, at *2. On appeal, Hallacy argued that his request was timely because the jury had not yet been impaneled. 2023 WL 2941533, at *6. The *Hallacy* panel noted that while no Kansas Supreme Court case has expressly identified "the point in time when the trial has begun for purposes of analyzing the defendant's request for self-representation," language in *Bunyard*, 307 Kan. at 467, "described—without deciding—that the first day of trial naturally constituted the start of the trial even before the jury was impaneled." 2023 WL 2941533, at *6; see *Bunyard*, 307 Kan. at 467 (describing the morning of the first day of trial: "When Bunyard's trial began on Monday, before jury selection began, the district judge and parties addressed several outstanding issues").

The *Hallacy* court "[found] no need to deviate from that natural interpretation" in *Bunyard*, which it found consistent with *Cuddy*. 2023 WL 2941533, at *6. Because Hallacy's day-of-trial request just before voir dire was untimely, the district court had discretion to grant or deny the request. 2023 WL 2941533, at *8. The panel concluded that the district court did not abuse its discretion by denying the request. 2023 WL 2941533, at *10; see *State v. Lopez*, No. 125,854, 2025 WL 1088544, at *12 (Kan. App. 2025) (unpublished opinion) (stating in dicta the request for self-representation on first day of trial just before voir dire was "untimely, so the district court could have denied it on that basis").

The logic in *Cuddy* and *Hallacy* is sound. Due to the public's interest in the efficient administration of justice, a trial court has discretion regarding a motion for self-representation made so close to the commencement of trial—right before voir dire

9

begins. This holding strikes a reasonable balance between the right to self-representation and the public's interest in the efficient administration of justice and "vests trial courts with the discretion to prevent the trivialization of two fundamental constitutional rights— the right to counsel and the right to be heard—into a game of delay tactics." *Cuddy*, 22 Kan. App. 2d at 610. When a request is made, as here, on the day of trial after the jurors have arrived at the courthouse, voir dire is imminent and the risk to the efficient administration of justice is the same regardless of whether the jury has been sworn in. When a defendant asks for self-representation on the day of trial before or after the jury is impaneled, many factors are relevant to determine the defendant's request, thus we review the district court's denial of that for an abuse of discretion. See 22 Kan. App. 2d at 610.

*We find no abuse of discretion.*

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). Shaffer, as the party asserting the error, bears the burden of proving the district court abused its discretion. *State v. McCullough*, 293 Kan. 970, 996, 270 P.3d 1142 (2012). "When considering a criminal defendant's motion for self-representation, a trial court may consider the reasons for the motion for self-representation; the quality of counsel's representation; the length and the stage of the proceedings; and the potential disruption and delay which could be expected from granting the motion." *Cuddy*, 22 Kan. App. 2d at 610.

Shaffer argues that the district court abused its discretion because it failed to consider any factor other than the timing of the request, and it failed to review other factors on the record. We disagree. *Cuddy* did not impose any such requirement, stating that in considering an untimely request, the court "*may* consider" the factors listed above. (Emphasis added.) 22 Kan. App. 2d at 610. And the district court in *Cuddy* did not apply all the factors it listed, yet that was not error. 22 Kan. App. 2d at 607, 610 (There was no

10

abuse of discretion in the district court's finding that self-representation "'would be imprudent. I think we need to get on with this trial, and I think you need to cooperate with your attorney. So let's get started.'").

Contrary to Shaffer's assertion, the district court here did consider various factors. It considered the reasons for Shaffer's request, as the district court judge explained to Shaffer that he was mistaken in believing that he was personally entitled to copies of all discovery material. The district court also considered the quality of counsel's representation, having recently found that Shaffer had not shown justifiable dissatisfaction with her and spoke highly of her skills as an attorney. The district court also considered the stage of the proceedings and the delay and disruption that would result from granting Shaffer's request to proceed pro se by emphasizing that the prospective jurors were already assembled at the courthouse that morning in anticipation of trial. And Shaffer had told the court that he wanted a continuance to prepare for trial if he represented himself. This would delay the proceedings and disrupt the jurors, court staff, and court schedule.

The district court reviewed the applicable caselaw, thoughtfully considered Shaffer's motion for self-representation, and considered relevant factors before denying his motion. Shaffer thus fails to meet his burden to show the district court abused its discretion by denying his request to represent himself.

II.    *Did the district court clearly err by failing to instruct the jury on the lesser included offense of misdemeanor fleeing or attempting to elude?*

Second, Shaffer argues that the district court clearly erred by not instructing the jury to consider misdemeanor fleeing or attempting to elude as a lesser included offense of felony fleeing or attempting to elude. Shaffer concedes that he did not request this instruction below. He asserts that the video footage of the police pursuit is not always

11

clear, making it difficult to discern which and how many traffic infractions, if any, he committed. He reasons that because the evidence would support a conviction for fleeing or attempting to elude without five or more moving violations necessary for a felony, a real possibility exists that the jury would have convicted him of misdemeanor fleeing or attempting to elude, if so instructed, instead of felony fleeing or attempting to elude.

*Standard of Review*

Our standard of review for alleged instructional errors is well established.

"Appellate courts apply a three-step inquiry to jury instruction issues, asking: (1) whether the appellate court has jurisdiction or whether the issue has been preserved for review; (2) whether an instructional error occurred, that is whether the disputed instruction was legally and factually appropriate when the entire record is reviewed in the light most favorable to the requesting party; and (3) whether, if error occurred, it is reversible, meaning is there a reasonable probability that any error affected the outcome of the trial in light of the entire record?" *State v. Alvarado-Meraz*, 321 Kan. 51, 70, 573 P.3d 266 (2025).

*Legal Appropriateness*

A lesser offense must be a lesser degree of the same crime, or a crime where all the elements of the lesser crime are identical to some elements of the crime charged. K.S.A. 21-5109(b). The State agrees that misdemeanor fleeing or attempting to elude is a lesser included offense of felony fleeing or attempting to elude and thus an instruction on the lesser crime would have been legally appropriate. See *State v. Couch*, 317 Kan. 566, 590, 533 P.3d 630 (2023) ("[j]ury instructions on lesser-included offenses are generally legally appropriate" and "a lesser-included offense includes a lesser degree of the same crime"), *abrogated on other grounds by State v. Garcia-Martinez*, 318 Kan. 681, 546

12

P.3d 750 (2024); see also K.S.A. 8-1568(b) (felony fleeing or attempting to elude); K.S.A. 8-1568(a)(1)(B) (misdemeanor fleeing or attempting to elude). We agree as well.

*Factual Appropriateness*

When determining whether an instruction was factually appropriate, we review the evidence in the light most favorable to the requesting party, here, Shaffer. See *State v. Chavez*, 310 Kan. 421, 430, 447 P.3d 364 (2019). Generally, an instruction on a lesser-included-offense is factually appropriate if "some evidence, viewed in a light most favorable to the defendant, emanating from whatever source and proffered by whichever party, . . . would reasonably justify the defendant's conviction for that lesser included crime." *State v. Berkstresser*, 316 Kan. 597, 601, 520 P.3d 718 (2022). So the question is whether the court would uphold a conviction for the lesser offense in the face of a challenge to the sufficiency of the evidence. *State v. Martinez*, 317 Kan. 151, 171, 527 P.3d 531 (2023). The State tacitly concedes that the misdemeanor fleeing or attempting to elude instruction is factually appropriate. We agree that the evidence is sufficient to support a conviction for the felony version of fleeing or attempting to elude, so it would also be sufficient for the misdemeanor version of the statute. See 317 Kan. at 171.

Because the requested instruction was both legally and factually appropriate, it was error for the district court not to give it.

*Reversibility*

Yet the district court's error in failing to give an instruction does not automatically necessitate reversal. When, as here, an instruction was not requested below, we ask whether the error in not instructing the jury is clear error. See *Berkstresser*, 316 Kan. at 601-02; *State v. Jarmon*, 308 Kan. 241, Syl. ¶ 1, 419 P.3d 591 (2018); see also K.S.A.

13

22-3414(3). Unless we find clear error in the failure to give the non-requested instruction, we will not reverse Shaffer's conviction.

"Clear error exists when the court is firmly convinced the outcome would have been different had the instruction been given." *State v. Moore*, 319 Kan. 557, 570, 556 P.3d 466 (2024). To show that the outcome *could* have been different is insufficient. See *Berkstresser*, 316 Kan. at 598. Shaffer, as the party asserting error, bears the burden to establish clear error, and this court's review is de novo based on the entire record. *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023).

Shaffer argues clear error is present because one or more jurors may have had a reasonable doubt as to one or more of the five moving violations, so the lesser offense instruction on misdemeanor fleeing or attempting to elude would have borne a different result.

But this argument ignores two things. First, we presume jurors follow their instructions. See *State v. Reid*, 286 Kan. 494, Syl. ¶ 18, 186 P.3d 713 (2008). The jury was properly instructed on the State's burden and the principles of reasonable doubt. Under the jury's instructions, if a juror had reasonable doubt as to the one of the five moving violations, then the jury would have returned a verdict of not guilty on count three. Yet it did not. The jury was polled, and its verdict was unanimous.

Second, Shaffer does not fairly characterize the evidence. The evidence was overwhelming that Shaffer committed five or more moving violations during his attempt to elude police. In their testimony, Trobaugh and Jones specified that Shaffer ran at least six red lights or stop signs, failed to signal at least five turns, drove the wrong way on an entrance ramp, and drove at speeds up to 70 miles per hour on city streets and 100 miles per hour on I-135. And contrary to Shaffer's claim, much of the body cam footage is clear, and it shows Shaffer repeatedly ran red lights and stop signs and failed to signal his

14

turns. Additionally, the officers narrate many of Shaffer's moving violations in real time during the pursuit, including his speed.

Based on our de novo review of the entire record, we are not firmly convinced the outcome would have been different had the misdemeanor instruction been given. See *State v. Johnson*, 321 Kan. 357, 366, 580 P.3d 20 (2025) ("The evidence of an accident during a police pursuit is strong enough that we cannot be clearly convinced the jury would have rejected the felony version of the offense if offered the opportunity. Johnson has not demonstrated the lack of a lesser included offense instruction was clearly erroneous."). Because the district court's failure to give a lesser included offense instruction was not clearly erroneous, we cannot reverse Shaffer's conviction on this ground. See K.S.A. 22-3414(3).

III.     *Did the district court clearly err by failing to instruct the jury not to consider Shaffer's clothing—an orange jail jumpsuit?*

Third, Shaffer argues his appearance at trial in an orange jumpsuit without instructing the jury to disregard his clothing tainted his right to the presumption of innocence. Shaffer concedes he did not ask the district court to give this instruction. So he argues that the district court clearly erred by not giving the jury a limiting instruction about his clothing when determining his guilt or innocence.

*Additional Facts*

As discussed in Issue I above, on the morning of trial, the district court convened a hearing to make a record of the fact that it had received a call from the Sheriff's Office that morning indicating that Shaffer was wearing an orange jail jumpsuit. Although Shaffer spent much of the hearing complaining about his attorney, the district court repeatedly addressed Shaffer's clothing, making it clear that he could dress in civilian

15

clothing, and offering to have such clothing provided if Shaffer could not procure his own clothing in time for the start of voir dire. Still, Shaffer repeatedly declined those options and voluntarily chose to proceed to trial in his jail clothing—an orange jumpsuit.

The district court signed an order to ensure that Shaffer would not be shackled in the jury's presence. No one referenced Shaffer's clothing during voir dire or at trial. Shaffer did not request, nor did the district court give, a jury instruction prohibiting the jury's consideration of Shaffer's appearance in the orange jail jumpsuit. We thus analyze the jury instruction issue for clear error. See *Berkstresser*, 316 Kan. at 601-02.

*Legal Appropriateness*

A defendant may choose to wear jail attire at trial, as the United States Supreme Court explained in *Estelle v. Williams*, 425 U.S. 501, 507-08, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976):

> "[T]he courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire. The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury."

Shaffer voluntarily chose to stand trial before his peers in prison garments, whether in hopes of eliciting sympathy, or otherwise.

Yet Kansas precedent holds that the presence of jail clothing is prejudicial and taints the way a jury perceives an individual. See *State v. Ward*, 292 Kan. 541, 575-76,

16

256 P.3d 801 (2011). It is thus inappropriate for a jury to consider a defendant's clothing or their incarceration status during deliberation. 292 Kan. at 576. As the Kansas Supreme Court explained:

> "[A] trial court almost always abuses its discretion to control the courtroom when it allows a defendant, witness, or nonwitness to be brought before a jury in jail clothing without an articulated justification explaining why it is necessary for the person to wear jail clothing and does not consider giving an admonition or instruction to the jury that it should not consider the clothing or the person's incarceration." 292 Kan. at 576.

As a result, in Kansas, when a defendant appears at trial in jail clothes, an admonition or a limiting instruction is almost always appropriate. 292 Kan. at 576 ("In some cases, an admonition may not be advisable, but the pros and cons should be weighed."). A limiting instruction was legally appropriate here.

### *Factual Appropriateness*

When determining whether an instruction would be factually appropriate, we review the evidence in the light most favorable to the requesting party, here, Shaffer. *Chavez*, 310 Kan. at 430. Shaffer wore jail clothing at trial. Although he did not testify, Shaffer sat in the courtroom with the jury, where they saw him in the orange jumpsuit. Thus, a limiting instruction was factually appropriate.

### *Reversibility*

Shaffer, as the party asserting clear error, bears the burden to establish clear error, and our review is de novo based on the entire record. See *Bentley*, 317 Kan. at 242.

Shaffer fails to meet his burden for several reasons. First, although no limiting instruction was given, the district court instructed the jurors that their verdict "must be

17

founded entirely upon the evidence admitted and the law as given in these instructions." As discussed, we presume jurors follow their instructions. See *Reid*, 286 Kan. 494, Syl. ¶ 18. By instructing the jurors to base their verdict entirely upon the evidence and law, the district court minimized the concern that the jurors would consider Shaffer's clothing when deliberating his guilt.

Second, as detailed above in Issue II, the evidence supporting Shaffer's conviction was overwhelming. The officers involved in the pursuit provided a detailed account of Shaffer's driving which established that he ran at least six red lights and stop signs, failed to signal at least five turns, and drove at speeds up to 100 miles per hour. The jurors viewed both officers' body cam footage which showed the chase, including Shaffer's evasive driving and numerous traffic infractions.

Third, the jurors acquitted Shaffer on count one. This shows that the verdict was based on the jurors' careful review of the evidence, not on any improper consideration such as Shaffer's clothing.

Because Shaffer fails to show clear error, the instructional error does not necessitate reversal of his conviction.

IV.  *Did the district court err by failing to appoint conflict-free counsel at a posttrial hearing regarding the effectiveness of Shaffer's trial counsel?*

Lastly, Shaffer argues the district court erred by not appointing conflict-free counsel at a posttrial hearing on a motion regarding the alleged ineffective assistance of his attorney. He asserts that we should construe his motion as a motion for a new trial based on ineffective assistance of counsel. He argues that a conflict was created by his trial counsel appearing on his behalf at the posttrial hearing and that his lack of conflict-free counsel deprived him of effective legal representation at that critical stage of the

18

proceeding. He concludes that the district court abused its discretion by denying his motion for new counsel and thus violated his constitutional right to effective assistance of counsel.

*Shaffer's pretrial motion alleges ineffective assistance of counsel.*

Resolution of this posttrial issue requires us to rewind to review pretrial proceedings. Before trial, Shaffer filed a pro se motion asserting ineffective assistance of counsel based on multiple pretrial errors and seeking the appointment of new counsel. The alleged errors included failure to argue the A&D order was falsified, lack of communication, refusal to give him a copy of the discovery, no independent investigation to prepare a defense, and no motion to reconsider the court's denial of his motion to quash his arrest and dismiss the complaint. Shaffer argued that those actions prejudiced him because he could not trust any attorney who did not follow the Kansas Rules of Professional Conduct.

The district court held a hearing on Shaffer's pro se motion. There, Shaffer argued without trial counsel's assistance. He relied on the contents of his motion and added that his attorney had disclosed information to the prosecutor but not to him, so she was not advocating for him.

Trial counsel responded that she had received a letter from the disciplinary board the week before, stating that Shaffer had filed a complaint against her but no response was required. The district court asked Shaffer's counsel if she felt she could continue representing Shaffer and she replied that she could.

The district court then denied Shaffer's motion, holding that he had not provided a justifiable reason to excuse his current trial counsel and have new counsel appointed. The district court added:

19

"I have known—I will tell you, I have known Ms. Mitchell for a long time now, I would say, in excess of 25 years. I know her to be a very competent, qualified attorney who knows what she's doing. I have personally seen her in trial. She's very good in front of a jury.

"She takes her job very seriously, and I have seen nothing from her except representing her clients to the utmost of her abilities, which is a high standard, and she meets it every time."

Shaffer does not contest this pretrial ruling on appeal.

*Shaffer files the identical motion again, posttrial.*

Yet after trial, for reasons unclear to us, the same pretrial motion alleging ineffective assistance of counsel was refiled and reheard. At the posttrial hearing, although given the chance to argue his motion a second time, Shaffer did not do so beyond complaining that he had been "forced to go to trial with" counsel and that if she had told the jury the A&D order was falsified, the jury would have acquitted him of all charges.

Trial counsel briefly responded. The district court then explained that certain claims in Shaffer's motion were based on defendant's misunderstanding of the law. The district court stated that his trial counsel "did an excellent job in representing" him, praising counsel for "an excellent argument" that helped lead to an acquittal on "the highest [severity level] charge" (count one). The district court then denied the motion.

*We find no error.*

Shaffer argues that a conflict was created when his trial counsel appeared on his behalf at the posttrial hearing on his ineffective assistance of counsel motion and that the district court abused its discretion by not making the appropriate inquiries. See *State v.*

20

*Sharkey*, 299 Kan. 87, 96, 322 P.3d 325 (2014) (holding when district court becomes aware of possible conflict of interest between attorney and defendant, court has duty to inquire further). Shaffer claims that the pretrial hearing focused on "discovery and preparing for trial" yet the arguments at the posttrial hearing focused on "actions at trial," so this court should analyze the motion as one for new trial based on ineffective assistance and he should have been appointed conflict-free counsel. We disagree.

Shaffer's attempt to recharacterize the posttrial motion as a motion for a new trial is belied by the record on appeal. The motion addressed at the posttrial hearing was the identical motion that had been filed before trial. After trial, the pretrial motion was merely refiled and stamped "copy"; although it bore no new filing date, it got a new hearing.

At that posttrial hearing, although Shaffer was given a chance to argue in support of his motion without help from counsel, he relied on the pretrial motion and added that he was forced to go to trial with his counsel. He raised no claims that had not been litigated in the pretrial motion and hearing. Shaffer thus argued the same motion twice—once pretrial and once posttrial. We are thus not persuaded that the district court should have construed the pretrial motion (which complained about pretrial actions taken by his trial counsel) as a motion for new trial (based on ineffective assistance of counsel during trial). The motion was adjudicated before trial, and the district court properly found that Shaffer failed to show justifiable dissatisfaction warranting the appointment of new counsel. We agree with the State that Shaffer was not entitled to the appointment of counsel for a posttrial hearing to relitigate an identical and previously litigated pretrial motion. We find no error.

Affirmed.